FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 25, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MICHAEL A. L.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:18-CV-00069-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 17. Attorney Dana Chris Madsen represents Michael A. L. (Plaintiff); Special Assistant United States Attorney Ryan Ta Lu represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 9. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On June 12, 2014, Plaintiff filed an application for Supplemental Security Income benefits. Tr. 204-13. Plaintiff alleged a disability onset date of December 3, 2006, Tr. 18, 96, due to Multiple Mental Health Issues, Depressive Disorder, Personality Disorder, Asperger's Syndrome, Learning Disorder, Back Injury, Left

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Leg Injury, and Encephalomalacia. Tr. 96, 204-13. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Jesse Shumway held a hearing on August 25, 2016, Tr. 43-81, and issued an unfavorable decision on September 26, 2016. Tr. 18-35. The Appeals Council denied review on December 28, 2017. Tr. 1-6. The ALJ's September 26, 2016, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 26, 2018. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on December 3, 1987 and was 26 years old on the date the application was filed, June 14, 2014. Tr. 67, 204-13. He took one special education math class in high school and earned a high school diploma. Tr. 68. After high school he enrolled in a community college culinary arts program, but he dropped out in the third quarter because he could not keep up with everything that they were doing. Tr. 68-69. Plaintiff testified at the administrative hearing on August 25, 2016, that he last worked on a part-time basis as a crowd control employee for Starplex Crowd Management Services in 2014 and 2015. Tr. 66-67.

Plaintiff testified that the reason he has not worked since 2015 is because he had "just been hurting a lot and didn't think [he would] be able to hold up to everything and with situational things going on." Tr. 67. Plaintiff reported that he has difficulty following instructions, standing for long periods of time, and paying attention. Tr. 232. He noted that he has lapses in thought and difficulty focusing, concentrating, and remembering things. Tr. 232. At the time of the hearing, Plaintiff was participating in counseling twice a month for depression and anxiety.

Tr. 69. He testified that he was not taking any medication for depression, although he was taking medication for lower back and left leg pain resulting from a fall from a roof in 2008. Tr. 69-70. Plaintiff testified that he is able to manage his lower back and leg pain. Tr. 71. He also testified that he experiences absence of motion seizures, but he is unable to describe them, as his mother is the one who witnesses the seizures. Tr. 71. His mother kept a seizure log documenting the dates of his seizures beginning in September 2014. ECF No. 16 at 4-6, Tr. 71-72. Plaintiff testified that he has about nine to ten seizures on any given day. Tr. 71-72.

Plaintiff testified that he lives with his mother. Tr. 73. He reported that he has a girlfriend, a couple of close friends, and other friends on social media. Tr. 73, 236. Plaintiff testified that he does not drive, but he rides the bus or gets rides with friends or family. Tr. 72, 86. He stated that he goes outside daily because his mother insists. Tr. 235. He reported that he goes out with friends sometimes, but mostly stays home and helps his mother. Tr. 73, 237. He testified that he grocery shops with his mother, Tr. 73, and he prepares meals once a week with help. Tr. 234. He reported that he does laundry, hauls wood, helps with chores around the house, visits family and friends, plays videos, listens to music, and writes music. Tr. 232, 234, 271. He noted that he mows the lawn two times a month, gets wood as often as needed, takes out the garbage daily, does the dishes when it is his turn, and does laundry when it is dirty. Tr. 272. He reported that he pays bills on his phone and is better at handling money than he was in the past. Tr. 273-74. Plaintiff stated that he does social things with others, and goes to dance places, parks, and friends' houses on a regular basis. Tr. 274. He testified that he smokes marijuana about three times a week because it helps him sleep and helps with his pain. Tr. 74. He reported that he has to be reminded to bathe. Tr. 233. He stated that he sometimes has problems getting along with others due to concentration, irritation, and depression. Tr. 275.

///

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the

claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 26, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, June 12, 2014. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: math learning disorder, depressive disorder NOS, anxiety disorder NOS, personality disorder NOS, cannabis use disorder, and seizure disorder. Tr. 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 21.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined that he could perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can never climb ladders, ropes, or scaffolds; he can have no exposure to hazards, such as unprotected heights and moving mechanical parts; he cannot operate a motor vehicle; he is limited to simple, routine tasks with a reasoning level of two or less and a math level of two or less; he needs a routine, predictable work environment that requires no more than simple decision making; he can have no public contact, and only occasional

superficial contact with coworkers and supervisors, with no collaborative tasks. Tr. 23.

At step four, the ALJ determined Plaintiff had no past relevant work. Tr. 33.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert (VE), Plaintiff could perform other jobs present in significant numbers in the national economy, including the light exertion level jobs of fish cleaner, dining room attendant, and kitchen helper. Tr. 33-34. The ALJ thus concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act since June 12, 2014, the date the application was filed. Tr. 34.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly determining that Plaintiff's seizure disorder did not meet or equal a listed impairment at step three; (2) improperly discrediting Plaintiff's symptom claims; and (3) failing to properly consider and weigh the opinion evidence. ECF No. 16 at 14. Additionally, Plaintiff argues that these errors are harmful and a remand for an immediate award of benefits is warranted. ECF No. 16 at 18-19.

## DISCUSSION[1]

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

**A.     Step Three**

Plaintiff argues the ALJ erred in determining that his seizure disorder did not meet a listed impairment. ECF No. 16 at 14-15. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. § 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff contends that the seizure log kept by his mother, and Conrad Nievera, M.D.'s epilepsy diagnosis, show that Plaintiff meets the listings for convulsive epilepsy (11.02) and non-convulsive epilepsy (11.03). ECF No. 16 at 15. Although Plaintiff argues his mother's seizure log shows that his seizure disorder meets a listed impairment, the ALJ accorded little weight to reports by Plaintiff's mother, finding that her reports were not consistent with the evidence. Tr. 30. Plaintiff also asserts that Dr. Nievera's epilepsy diagnosis supports a listed impairment, but a diagnosis alone does not establish the existence of a severe impairment. *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). Rather, Plaintiff must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. § 416.925(d).

Beyond these bare assertions, Plaintiff fails to assert any argument as to why the ALJ erred at step three. ECF No. 16 at 15. Therefore, Plaintiff waived the argument. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[2] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to challenge the issue in his opening brief, the Court declines to consider this issue.

The Court will not disturb the ALJ's determination regarding Plaintiff's step three determination.

### B. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred by improperly discrediting his symptom complaints. ECF No. 16 at 15-16. It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. In considering Plaintiff's symptoms, the ALJ must follow a two-step analysis. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is objective evidence of an underlying impairment that could reasonably be expected to

---

[2] Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

produce Plaintiff's pain or other symptoms. *Id*. at 1036 (quotation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*; citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient: rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 24. The ALJ recounted the following reasons for discrediting Plaintiff's symptom testimony: (1) inconsistencies with the medical evidence; (2) inconsistencies with Plaintiff's activities of daily living; (3) non-compliance with medical advice; (4) poor work history; and (5) motivated by secondary gain. Tr. 27, 32-33. The ALJ provided specific examples of each. Tr. 24-33.

### 1. Inconsistent Medical Evidence

First, the ALJ noted that the medical evidence in the record, both the objective evidence and Plaintiff's treatment notes, undermined Plaintiff's allegations regarding the severity of his symptoms. Tr. 24, 32. An ALJ may, with clear and convincing reasons, discount the claimant's statements if not fully supported by objective evidence. *Carmickle*, 533 F.3d at 1160. These reasons need only be supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id*., citing 20 C.F.R. 404.1529(c)(2).

Here, the ALJ stated that Plaintiff testified he had seizures, but he did not know when they happened. Tr. 23-24 (citing Tr. 71). However, as determined by the ALJ, there was no objective documentation of Plaintiff's seizures. Tr. 24. An EEG and a brain MRI done on November 10, 2011 both showed normal results. Tr. 21 (citing Tr. 560-62, 666). Plaintiff told neurologist Dr. Nievera on November 1, 2013 that his seizures were "pretty much controlled," and he would have breakthrough seizures if he forgot to take his medication. Tr. 24 (citing Tr. 708). During a follow-up for seizures at a neurology center on October 2, 2014, Plaintiff reported to Kathalene Cassels, P.A., that he had no large seizure activity, but he had some "spacing" out episodes and his mother was unsure if these were seizures. Tr. 24 (citing Tr. 683). Plaintiff reported that these episodes were occurring less than before, but on a return visit to the neurology center on April 24, 2015, he reported that he was having up to six seizures a night since he stopped smoking marijuana. Tr. 24 (citing Tr. 683, 774). The ALJ noted there was no evidence of ongoing treatment with Ms. Cassels or another neurologist for his seizures, suggesting that his seizures had improved. Tr. 24.

Plaintiff testified that the reason he has not worked since 2015 is because he had "just been hurting a lot and didn't think [he would] be able to hold up to everything and with situational things going on." Tr. 67. The ALJ noted that Plaintiff reported difficulty following instructions and paying attention. Tr. 23 (citing Tr. 232). He stated he had lapses in thought and difficulty with focus and concentration. Tr. 23 (citing Tr. 232). He stated it was very difficult for him to remember things. Tr. 23 (citing Tr. 232). He endorsed limitations with lifting, bending, standing, walking, memory, completing tasks, concentration, understanding, and following instructions. Tr. 23 (citing Tr. 237). Plaintiff also reported limitations with sitting, seeing, and getting along with others. Tr. 23 (citing Tr. 275). The ALJ cited treatment notes throughout the record that show Plaintiff to be appropriately dressed, groomed, with appropriate hygiene,

cooperative attitude, regular speech, full insight and fair judgment, good fund of knowledge, with normal memory and normal language. Tr. 28-29 (citing Tr. 739, 805, 807). David Grubb, M.D. reported after a meeting with Plaintiff that his main diagnostic impression was not one of depression or mood disorder. Tr. 26 (citing Tr. 663). Rather, Dr. Grubb noted that Plaintiff presented as being quite socially maladjusted, but not unhappy, and in the Asperger's spectrum. Tr. 26 (citing Tr. 663). The ALJ stated that there were various Global Assessment Functioning (GAF)[3] scores noted throughout the record, but gave the GAF scores little weight, finding them to be inconsistent with Plaintiff's own self-reported activities. Tr. 32. The ALJ also stated that GAF scores are highly subjective. Tr. 32.

As indicated by the ALJ, the medical evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case. Tr. 26-28. This was a proper basis for the ALJ to discredit Plaintiff's symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Rollins*, 261 F.3d at 857.

### 2. Inconsistent Activities of Daily Living

Second, as determined by the ALJ, the record reflects that Plaintiff had reasonably high-functioning activities of daily living. Tr. 33. It is well-established that the nature of daily activities may be considered when evaluating credibility.

---

[3] While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Moreover, the GAF scale is no longer included in the *DSM–V*. Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013). "It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013).

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was proper for the ALJ to find that Plaintiff's reports of activities (ability to help his mother, care for a dog along with his brother and friends, prepare meals, do laundry and other chores, haul wood, travel by public transportation, shop in stores, go out with friends, and write music, Tr. 29), were inconsistent with the limitations Plaintiff alleged, and detracted from his overall credibility.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see also Morgan*, 169 F.3d at 599-600, 603 (affirming the ALJ's adverse determination regarding symptom testimony and noting that evidence of the claimant's daily activities, such as the ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child, served as evidence of his ability to work); *Rollins*, 261 F.3d at 857 (affirming the ALJ's adverse determination regarding symptom testimony and noting that the claimant's allegation of disability was undermined by testimony about her daily activities, such as attending to the needs of her two young children, cooking, and shopping).

      The ALJ noted that Plaintiff had a girlfriend, spent time with friends, and had a couple of close friends.  Tr. 29, 33 (citing Tr. 271, 264).  Plaintiff reported less depression when he spent more time with friends.  Tr. 33 (citing Tr. 816).  The ALJ noted that Plaintiff reported to a social worker at Frontier Behavioral Health that he had spent time with several friends over the previous two weeks which had decreased his feelings of depression.  Tr. 29 (citing Tr. 816).  He reported he was going to hang out with a friend that he produced music with and do some recording.  Tr. 29 (citing Tr. 816).  Plaintiff reported that he and his girlfriend had attended a local convention together and he had fun getting out.  Tr. 29 (citing Tr. 807).  He stated that during the day he would do chores, talk to friends, watch

television, and write music. Tr. 29 (citing Tr. 232, 234, 271). The ALJ indicated Plaintiff was able to motivate himself enough to engage in activities that interested him, such as producing music. Tr. 33.

The ALJ reasonably concluded, based on this record, that Plaintiff's reports of daily activities did not support the level of impairment alleged by Plaintiff. Tr. 29, 32-33. The ALJ's finding is supported by substantial evidence.

### 3. Non-Compliance with Medical Advice

Third, the ALJ considered that Plaintiff's refusal to discontinue marijuana use despite his physical doctors' denial of a medical marijuana card, and despite his mental health providers' advice that it was more harmful than helpful, undermined his allegations of significant mental health pathology. Tr. 33. It is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Smolen*, 80 F.3d at 1284 (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility). Here, the ALJ indicated Plaintiff testified that he smoked marijuana a few times per week because he felt that it helped his symptoms. Tr. 33, 74. However, Plaintiff asked his doctor to give him a medical marijuana card, and his doctor refused the request. Tr. 33, 74-75. Plaintiff testified his neurologist told him that he was not sure about Plaintiff's use of marijuana, and that his mental health providers told him that it could have different effects. Tr. 33, 75. The ALJ noted that when asked during the administrative hearing whether he was told that smoking marijuana was more likely to be harmful than helpful, Plaintiff responded, "more or less." Tr. 33, 75.

The ALJ reasonably found that Plaintiff's refusal to discontinue marijuana use despite his doctors' and health providers' advice undermines his allegations of significant mental health pathology. Tr. 33. This was a proper basis for the ALJ to

discredit Plaintiff's symptom testimony. *Parra*, 481 F.3d at 750-51; *Rollins*, 261 F.3d at 857.

### 4. Poor Work History

Fourth, the ALJ determined that Plaintiff had virtually no work history, which raised a question as to whether his unemployment was actually caused by medical impairments. Tr. 33. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 416.929 (work record can be considered in assessing credibility). Here, the ALJ indicated that Plaintiff's only reported earnings were from after his disability filing date, except for reported earnings of $130.85 in 2007. Tr. 33 (citing Tr. 228). As noted *supra*, the ALJ determined that Plaintiff was able to motivate himself enough to engage in activities that interested him, such as producing music. Tr. 33. Given that the record supports the ALJ's finding regarding Plaintiff's limited work history, it was proper for the ALJ to note Plaintiff's potential lack of motivation to work consistently when discrediting Plaintiff's symptom testimony.

### 5. Motivated by Secondary Gain

Finally, the ALJ cited several reports by Plaintiff that indicated his attempts to receive Supplemental Security Income benefits may have been motivated by secondary gain. Tr. 27. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Here, the ALJ indicated that Plaintiff stated he needed to obtain services for a safety net so he could work on developing skills for getting a job. Tr. 27, 757. Plaintiff reported that he did not earn enough money through his two employers, and he used his Salvation Army cash assistance to obtain equipment for recording his raps. Tr. 27, 743. Plaintiff reported to a social worker on August 25, 2014 that he was ambivalent

about services but was trying to get on Supplemental Security Income and was trying to prove that he needed the benefits. Tr. 27, 743. Plaintiff stated that his mother was convinced he had several issues that warranted him receiving Supplemental Security Income benefits, she pressured him a lot to give her money, and he believed the reason she was fighting for him to have Social Security was so that he could give her more money. Tr. 27, 740-41, 743. Given that the record supports the ALJ's references to Plaintiff's statements about financial reasons related to seeking benefits, it was proper for the ALJ to note that Plaintiff was potentially motivated by secondary gain when discrediting Plaintiff's symptom testimony.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

**C.     Medical Source Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the opinion evidence. ECF No. 16 at 16-17. Specifically, Plaintiff asserts that the ALJ erred in giving more weight to the opinion of a non-examining, non-treating doctor over the opinion of examining doctors. *Id.*

In weighing medical source opinions in a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: (i)

treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An examining physician's opinion is given more weight than that of a non-examining physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

Here, Plaintiff has failed to challenge the reasons the ALJ provided for rejecting the examining doctors' opinions. ECF No. 16 at 16-17. Instead, he argues that the ALJ should not have given more weight to the non-examining, non-treating opinion of medical expert Marian Martin, Ph.D. *Id*. An ALJ is required to provide some explanation for rejecting a medical opinion. S.S.R. 96-8p ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Plaintiff provides no details about any of the opinions that he alleges the ALJ improperly disregarded. Because

Plaintiff failed to challenge the reasons the ALJ provided for rejecting the examining doctors' opinions, the Court will not disturb the ALJ's treatment of the medical opinions. *See Carmickle*, 533 F.3d at 1161 n.2.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED February 25, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE